MJH

AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
SEP 22 2017

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Gold Samsung Galaxy Grand Prime Cellular Telephone | )<br>)<br>)   Case No.  **'17MJ3498**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
One Gold Samsung Galaxy Grand Prime Cellular Telephone Model: SM-G531H (Attachment A-1)

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC §§ 952, 960, 963 | Importation of Controlled Substance and Conspiracy |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Scott MacDonald, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/22/17

*Judge's signature*

City and state: San Diego, California        Hon. Karen S. Crawford
                                             *Printed name and title*

# AFFIDAVIT

I, Special Agent Scott MacDonald, being duly sworn, declare and state:

## INTRODUCTION

1. This affidavit supports an application to search the following target property: a White Samsung Cellular Telephone Model SM-G531H; IMEI: 358174079758927 ("**Target Telephone 1**") as described in Attachment A-1, and seizure of evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 952, 960, and 963.

2. **Target Telephone 1** was seized from Fabiola MAGOS-Cano ("MAGOS") on June 10, 2017, at the time of her arrest at the San Ysidro Port of Entry for the importation of approximately 30.06 kilograms (66.27 pounds) of fentanyl and approximately 8.44 kilograms (18.60 pounds) of methamphetamine. MAGOS was the driver and sole occupant of a green 2011 Renault Koleos bearing Baja California Mexico license plates ALN3281.

3. Based on the information below, there is probable cause to believe that a search of **Target Telephone 1** will produce evidence of the aforementioned crimes, as described in Attachment B. **Target Telephone 1** is currently located at the HSI evidence locker in the Southern District of California.

## EXPERIENCE AND TRAINING

4. I am a Special Agent and currently employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have held my current position with HSI since April 2010. I am a graduate of the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC"). During the course of my training at FLETC, I learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence – all in relation to violations of the United States Code.

5. Currently, I am assigned to a Money Laundering group in San Diego,

California. I primarily investigate violations of the United States Code that stem from the International border between Mexico and the United States, including drug smuggling and money laundering. I have participated in investigating various drug trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents with extensive experience in narcotics smuggling investigations.

6. I have arrested or participated in the arrest of numerous persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates, as well as cooperating individuals and informants. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States, and while operating inside the United States. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks. I have also gained information as to the normal operational habits of persons who make their living as narcotics smugglers.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as Cocaine, Methamphetamine, or Heroin. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law

enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other Homeland Security Investigations Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

   b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

11. SD Cards are memory devices that enable the transfer and storage of electronic records. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SD Card that has been utilized in connection with that telephone.

## FACTS SUPPORTING PROBABLE CAUSE

12. On June 10, 2017, MAGOS, attempted to enter the U.S. from Mexico through the San Ysidro Port of Entry. At the time of entry, MAGOS was the driver, registered owner and sole occupant of a 2011 white Renault Koleos bearing MM/LP ALN3281 (the "Renault").

13. In primary inspection, a Customs and Border Protection Officer ("CBPO") encountered MAGOS at the primary inspection booth. MAGOS presented her DSP-150 visa as her entry documents to the CBPO. When asked, MAGOS stated she was going to Coronado in San Diego, CA to the swap meet. CBPO received two negative customs declarations from MAGOS. The CBPO referred the vehicle and its occupant to secondary inspection due to a computer generated alert.

14. In secondary, a CBPO conducted a seven-point inspection and discovered aftermarket compartments constructed underneath both the front seats that extended

forward towards the feet section and ended at the firewall. From the compartments, the CBPO retrieved seventeen packages from the driver side compartment and eighteen packages from the passenger compartment. Based of field tests, the packages contained approximately 30.06 kilograms (66.27 pounds) of fentanyl and 8.44 kilograms (18.60 pounds) of methamphetamine.

15. MAGOS was arrested and **Target Telephone 1** was seized from MAGOS.[1] MAGOS waived her rights under *Miranda* and stated that she applied to a help wanted newspaper advertisement in December 2016. An individual MAGOS knows as "Mateo" responded to her application and MAGOS met with Mateo at Plaza Rio in February 2017. Mateo registered the white Renault in MAGOS' name and MAGOS began crossing the vehicle in approximately February 2017. MAGOS stated that Mateo paid all the fees and did the paperwork to register the vehicle in her name. Mateo told MAGOS that her job would not be to cross narcotics but that she would be picking up money and taking it south. MAGOS knew that crossing money from the U.S. to Mexico was illegal. MAGOS was paid $1,000 per trip. Prior to smuggling any contraband, MAGOS was instructed to "burn" the plates of the Renault by conducting multiple border crossings in the Renault through the Southern California Ports of Entry.

16. MAGOS said that the morning of June 10, 2017, she picked up the car from Mateo in Tijuana and was told to cross into the U.S. and go to the swap meet near Coronado Avenue, Imperial Beach, CA. MAGOS stated that upon arrival at the swap meet, she usually meets up with an unknown Hispanic male who is approximately 30 years old and wears a beanie hat. This unknown Hispanic male takes possession of her vehicle for an hour and then she returns it to Mexico. MAGOS is paid by the organization the same day she returns to Mexico. MAGOS crossed the border in the Renault approximately 20 times for Mateo.

17. Based upon my experience investigating narcotics smugglers and the particular investigation in this case, I believe that MAGOS likely used **Target**

---

[1] MAGOS is charged in 17CR1794-BAS.

**Telephone 1** to coordinate the importation of narcotics into the U.S.

18. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that **Target Telephone 1,** contains evidence of violations of 21 U.S.C. §§ 952, 960 and 963, including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook) photographs, audio files, videos, or location data, all from the 90 days prior to the seizure of the telephones:

   a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;
   b. tending to identify other facilities, storage devices, or services – such as e-mail addresses, IP addresses, phone numbers – that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;
   c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;
   d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;
   e. tending to identify the user of, or persons with control over or access to, the target phones; or
   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

### METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books

and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the subject cellular telephone and device and subject them to analysis. All forensic analysis of the data contained within the telephone and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

21. Based on all of the facts and circumstances described above, there is probable cause to conclude that MAGOS used **Target Telephone 1,** to facilitate the offenses of importation of Fentanyl and Methamphetamine. **Target Telephone 1,** was likely used to facilitate the offense by transmitting or storing data that constitutes evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

22. Because **Target Telephone 1** was seized, there is probable cause to believe that evidence of illegal activity committed by MAGOS continues to exist on **Target Telephone 1.**

23. WHEREFORE, I request that the court issue a warrant authorizing HSI and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Scott MacDonald
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 22nd day of September, 2017.

_____
Honorable Karen S. Crawford
United States Magistrate Judge

## ATTACHMENT A-1

The item to be searched is as follows:

Gold Samsung Galaxy Grand Prime Cellular Telephone
Model: SM-G531H
S/N: R51H50HAEHY
IMEI: 358174079758927

Currently in the possession of Homeland Security Investigations, which is located at 2297 Niels Bohr Court, San Diego, CA 92154.



## ATTACHMENT B
## EVIDENCE TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 21 U.S.C. Sections 952, 960, and 963:

1. Communications, records, or data including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook), photographs, audio files, videos, or location data from the 90 days prior to seizure of the telephones:

    a. tending to indicate efforts to possess, transport, import, and deliver controlled substances from Mexico to the United States;

    b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to possess, transport, import, and deliver controlled substances from Mexico to the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the possession, transportation, importation, and delivery of controlled substances from Mexico to the United, including both the source of supply and recruiter for the instant offense;

    d. tending to identify travel to or presence at locations tending to indicate the preparation or execution of the possession, transportation, importation, and delivery of controlled substances from Mexico to the United States, including locations both in Mexico and the United States;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.